# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# SPRINGFIELD DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 99-cr-30068 |
| ) | |
| **ROBERT VAUGHN,** ) | |
| ) | |
| **Defendant.** ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court is Defendant Robert Vaughn's Amended Motion for Compassionate Release (d/e 103) requesting a reduction in his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A). For the reasons set forth below, the motion is DENIED.

## I. BACKGROUND

On May 12, 2000, a jury found Defendant guilty of one count each of of conspiracy to distribute cocaine base, retaliating against a witness, and possessing a firearm in furtherance of a drug trafficking crime. In this case, the last of those charges involved one of Defendant's co-conspirators detonating an explosive device at the home of a confidential informant at Defendant's direction. On

November 3, 2000, United States District Judge Jeanne Scott sentenced Defendant to a total of 720 months' imprisonment, consisting of 240 months on the first count, 120 months on the second count, and 360 months on the third count, all to run consecutively.  Judgment, d/e 50.  On July 2, 2020, the undersigned District Judge reduced Defendant's sentence to a total of 480 months' imprisonment, consisting of 120 months on each of the first two counts to run concurrently with each other and consecutively to the 360 months imposed on the third count.  Order for Sentence Reduction, d/e 99.  Defendant is currently serving his sentence at FCI Pekin in Pekin, Illinois and has a projected release date of December 31, 2034.  See Bureau of Prisons, Find an Inmate, https://www.bop.gov/inmateloc/ (last accessed August 19, 2020).

On August 3, 2020, Defendant filed a pro se motion for compassionate release (d/e 101) pursuant to 18 U.S.C. § 3582(c)(1)(A).  On August 10, 2020, after appointment of the Federal Public Defender, Defendant filed an amended motion for compassionate release (d/e 103).  Defendant requests compassionate release due to his health issues and the COVID-19 pandemic.  Defendant is 50 years old and has been diagnosed with

obesity, hypertension, sleep apnea, hepatitis C, and several mental health conditions.  Am. Mot. Compassionate Release 2-3.

Defendant initially proposed to live with his son, Eric, in Blacksburg, Virginia, if released.  Id. at 23.  The United States Probation Office was unable to investigate Defendant's proposed release plan because Defendant's son did not respond to the Probation Office's attempts at contact.  See Mem. 2, d/e 106.  Defendant then proposed in the alternative that he be allowed to reside at the Peoria Rescue Mission, in Peoria, Illinois.  In a second Memorandum (d/e 108) addressing the alternative release plan, the Probation Office concluded that the proposed residence was not suitable because a homeless shelter does not provide a stable residence and because there would be nothing requiring Defendant to reside at the shelter or to remain engaged in the programming offered.

On August 11, 2020, the Government filed a Response in Opposition to Defendant's Motion for Compassionate Release (d/e 104).  The Government argues that the Court should deny Defendant's compassionate release motion given Defendant's criminal history and because Defendant does not meet the

requirements for compassionate release.  The Government also notes that Defendant's medical conditions are currently being treated during his incarceration.

On August 19, 2020, the Court held a videoconference hearing on Defendant's amended motion.  Defendant appeared by telephone from FCI Pekin.  As of August 19, 2020, the Bureau of Prisons (BOP) reports that FCI Pekin has no active confirmed inmate cases of COVID-19 and four active confirmed staff member case of COVID-19.  See Federal Bureau of Prisons – COVID-19 Cases, https://www.bop.gov/coronavirus/ (last accessed August 19, 2020).

## II. ANALYSIS

As a general matter, the Court is statutorily prohibited from modifying a term of imprisonment once it has been imposed.  See 18 U.S.C. § 3582(c).  However, several statutory exceptions exist, one of which allows the Court to grant a defendant compassionate release if certain requirements are met.  See 18 U.S.C. § 3582(c)(1)(A).

Section 603(b)(1) of the First Step Act amended the statutory language at 18 U.S.C. § 3582(c)(1)(A).  See First Step Act of 2018,

Pub. L. No. 115-391, 132 Stat 5194. Prior to the First Step Act, the Court could grant a defendant compassionate release only if the Director of the BOP filed a motion seeking that relief. With the enactment of the First Step Act, 18 U.S.C. § 3582(c)(1)(A) now allows an inmate to file with the Court a motion for compassionate release, but only after exhausting administrative review of a BOP denial of the inmate's request for BOP to file a motion or waiting thirty days from when the inmate made his or her request, whichever is earlier. The statute now provides as follows:

> The court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

Having considered the relevant factors set forth in 18 U.S.C. § 3553(a), the Court concludes that Defendant has not established that extraordinary and compelling reasons warrant a reduction in his term of imprisonment.

The spread of COVID-19 has presented extraordinary and unprecedented challenges for the country and poses a serious issue for prisons. Due to the infectious nature of the virus, the Centers for Disease Control and Prevention (CDC) and state governments have advised individuals to practice good hygiene and social distancing and isolation. Social distancing can be difficult for individuals living or working in a prison. Further, Defendant has been diagnosed with underlying medical conditions that may increase the serious risks that COVID-19 presents for Defendant. See Coronavirus Disease 2019 (COVID-19) – People at Increased Risk of Severe Illness – People with Certain Medical Conditions, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-

at-higher-risk.html (last accessed August 18, 2020).

Among Defendant's health conditions, he has been diagnosed with obesity, which the CDC's latest guidance indicates increases the risk of severe illness from COVID-19.  At the time Defendant was sentenced in this case, he stood 5 feet 6 inches tall and weighed 170 pounds.  PSR ¶ 52, d/e 51.  Since he has been in BOP custody, Defendant's weight has increased to 260 pounds, resulting in a body mass index of 40, which is considered to be severly obese. Am. Mot. Compassionate Release 3; Resp. 3.  The BOP medical records filed in this case reflect that Defendant has been counseled several times on lifestyle changes that he should make to manage his weight.  See d/e 105.

Defendant has also been diagnosed with hypertension, which the CDC's current guidance indicates may increase the risks from COVID-19.  While the BOP medical records do reveal some concerning blood pressure readings, they also show that this condition was not being treated with medication until July 2020.

The Court recognizes that there have been several confirmed cases of COVID-19 at FCI Pekin, the facility where Defendant is housed, but the confirmed inmate cases have been at the adjacent

minimum security camp, rather than in the FCI itself.  According to the Government, BOP has implemented rigorous procedures designed to mitigate the spread of the virus in its facilities.  At the time Defendant filed his amended motion for compassionate release on August 10, 2020, BOP reported one active confirmed inmate case of COVID-19 and two confirmed staff member cases at FCI Pekin.  <u>See</u> Am. Mot. Compassionate Release 2.  In the intervening time between when Defendant filed his amended motion and when the Court held a hearing on the motion, the number of staff member cases at FCI Pekin has increased to four, but the number of inmate cases is now reported as zero.

Further, Defendant has more than fourteen years remaining on his sentence, assuming he receives full good time credit.  In committing the offense for which he is now incarcerated, Defendant first paid two people to place a bomb at the home of a confidential informant.  When the two individuals failed to set the bomb off, Defendant drove his girlfriend and co-conspirator to the home and directed her to place a second explosive device.  When the second bomb was detonated, the explosion caused extensive damage to the home, although fortunately no one was injured.  Defendant's

criminal history includes prior convictions for battery, aggravated battery, burglary, illegal possession of a weapon by a felon, and distribution of cocaine base, among others.  PSR ¶¶ 28-38.

The Court does note, however, that despite his lengthy incarceration, Defendant has been disciplined only twice while in BOP custody, and the most recent of the two incidents was in 2006. Additionally, Defendant has maintained consistent employment while in prison and has received treatment for mental health conditions that previously had gone untreated.

Finally, though, Defendant has not proposed an adequate release plan.  The Probation Office was unable to investigate Defendant's original release plan to live with his son in Virginia and the Probation Office concluded that Defendant's alternative release plan was not suitable.

The Court, taking all the relevant facts into account, finds that Defendant has not established that there exist extraordinary and compelling reasons that warrant a reduction in his term of imprisonment.

### III. CONCLUSION

For the reasons set forth above, Defendant Robert Vaughn's

Amended Motion for Compassionate Release (d/e 103) and Defendant's pro se Motion for Compassionate Release (d/e 101) are DENIED.  This ruling does not preclude Defendant from filing another motion for compassionate release in the future if circumstances change.

ENTER:  August 19, 2020

>  */s/ Sue E. Myerscough*
>  SUE E. MYERSCOUGH
>  UNITED STATES DISTRICT JUDGE