IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 99-cr-30068 |
| | ) | |
| ROBERT VAUGHN, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court is Defendant Robert Vaughn's Second Amended Motion for Compassionate Release (d/e 112) requesting a reduction in his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A). For the reasons set forth below, the motion is DENIED.

## I. BACKGROUND

On May 12, 2000, a jury found Defendant guilty of one count each of conspiracy to distribute cocaine base, retaliating against a witness, and possessing a firearm in furtherance of a drug trafficking crime. In this case, the last of those charges involved one of Defendant's co-conspirators detonating an explosive device at

the home of a confidential informant at Defendant's direction.  On November 3, 2000, United States District Judge Jeanne Scott sentenced Defendant to a total of 720 months' imprisonment, consisting of 240 months on the first count, 120 months on the second count, and 360 months on the third count, all to run consecutively.  Judgment, d/e 50.  On July 2, 2020, the undersigned District Judge reduced Defendant's sentence to a total of 480 months' imprisonment, consisting of 120 months on each of the first two counts to run concurrently with each other and consecutively to the 360 months imposed on the third count.  Order for Sentence Reduction, d/e 99.  Defendant is currently serving his sentence at FCI Pekin in Pekin, Illinois and has a projected release date of December 31, 2034.  See Bureau of Prisons, Find an Inmate, https://www.bop.gov/inmateloc/ (last accessed January 12, 2021).

On August 3, 2020, Defendant filed a pro se motion for compassionate release (d/e 101) pursuant to 18 U.S.C. § 3582(c)(1)(A).  On August 10, 2020, after appointment of the Federal Public Defender, Defendant filed a first amended motion for compassionate release (d/e 103).  In the first motion for compassionate release, Defendant requested compassionate release

due to his health issues and the COVID-19 pandemic.  Defendant is
50 years old and has been diagnosed with obesity, hypertension,
sleep apnea, hepatitis C, and several mental health conditions.
First Am. Mot. Compassionate Release 2-3.

 The Court denied Defendant's first Amended Motion for
Compassionate Release after a hearing on August 19, 2020,
concluding in part that Defendant had not proposed an adequate
release plan.  <u>See</u> Opinion 9-10, d/e 109.  In denying the first
motion for compassionate release, the Court also noted the length
of time remaining on Defendant's sentence and the fact that while
COVID-19 was then present at the minimum security satellite camp
at FCI Pekin, COVID-19 had not yet been detected among the
inmate population in the medium security FCI Pekin facility in
which Defendant is housed.  <u>Id.</u> at 7-8.

 On November 30, 2020, Defendant filed a second pro se
motion for compassionate release citing a significant COVID-19
outbreak at the medium security FCI Pekin facility as a changed
circumstance sufficient to support a second motion.  <u>See</u> Renewed
Mot. Compassionate Release 1, d/e 110.  On December 7, 2020,
following the reappointment of the Office of the Federal Public

Defender to represent Defendant, Defendant filed the Second
Amended Motion for Compassionate Release now before the Court.

In the Second Amended Motion, Defendant now proposes to
live with a friend at her residence in Springfield, Illinois, if he were
to be released from custody.  Second Am. Mot. Compassionate
Release 5.  The United States Probation Office investigated the new
release plan and concluded that the plan is not suitable because
Defendant's friend does not intend to notify her landlord that
Defendant would be residing with her and because the friend might
jeopardize the housing assistance she receives by allowing
Defendant to reside in the home.  See Mem. 2, d/e 115.

On December 10, 2020, the Government filed a Response in
Opposition to Defendant's Second Motion for Compassionate
Release (d/e 114).  The Government argues that the Court should
deny Defendant's Second Amended Motion for Compassionate
Release because there is no indication that Defendant made a new
request for compassionate release to the warden of his facility after
the Court's denial of his first motion before filing the second motion.
Resp. 2.  The Government further argues that the Court should
deny the second motion given Defendant's criminal history and

because Defendant does not meet the requirements for compassionate release.  Id. at 5-6.  The Government also notes that Defendant's medical conditions are currently being treated during his incarceration.  Id. at 6-7.

As of January 12, 2021, the Bureau of Prisons (BOP) reports that FCI Pekin has 102 active confirmed inmate cases of COVID-19 and eleven active confirmed staff member case of COVID-19.  See Federal Bureau of Prisons – COVID-19 Cases, https://www.bop.gov/coronavirus/ (last accessed January 12, 2021).

## II. ANALYSIS

As a general matter, the Court is statutorily prohibited from modifying a term of imprisonment once it has been imposed.  See 18 U.S.C. § 3582(c).  However, several statutory exceptions exist, one of which allows the Court to grant a defendant compassionate release if certain requirements are met.  See 18 U.S.C. § 3582(c)(1)(A).

Section 603(b)(1) of the First Step Act amended the statutory language at 18 U.S.C. § 3582(c)(1)(A).  See First Step Act of 2018, Pub. L. No. 115-391, 132 Stat 5194.  Prior to the First Step Act, the

Court could grant a defendant compassionate release only if the Director of the BOP filed a motion seeking that relief.  With the enactment of the First Step Act, 18 U.S.C. § 3582(c)(1)(A) now allows an inmate to file with the Court a motion for compassionate release, but only after exhausting administrative review of a BOP denial of the inmate's request for BOP to file a motion or waiting thirty days from when the inmate made his or her request, whichever is earlier.  The statute now provides as follows:

> The court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

In this case, Defendant submitted a compassionate release

request to the warden of FCI Pekin prior to the filing of his first compassionate release motion with the Court.  <u>See</u> First Am. Mot. Compassionate Release 7, 8-9.  The Government now argues that Defendant is required to submit a second request to the warden of FCI Pekin prior to filing a second motion for compassionate release in this Court.  <u>See</u> Resp. 2.  The Court finds that the statutory language of 18 U.S.C. § 3582(c)(1)(A) does not require Defendant to file a second request with the warden of his facility prior to filing a second motion for compassionate release in this Court when the reasons for release are substantially the same.  <u>See</u> <u>United States v. Walker</u>, No. 13-CR-30042-001, 2020 WL 6363841, at *2 (C.D. Ill. Oct. 29, 2020).   Because Defendant submitted a request for compassionate release to the warden of FCI Pekin more than thirty days ago, the Court finds that Defendant has met the thirty-day requirement found in 18 U.S.C. § 3582(c)(1)(A).

Nonetheless, having considered the relevant factors set forth in 18 U.S.C. § 3553(a), the Court concludes that Defendant has not established that extraordinary and compelling reasons warrant a reduction in his term of imprisonment.

The spread of COVID-19 has presented extraordinary and

unprecedented challenges for the country and poses a serious issue for prisons.  Due to the infectious nature of the virus, the Centers for Disease Control and Prevention (CDC) and state governments have advised individuals to practice good hygiene and social distancing and isolation.  Social distancing can be difficult for individuals living or working in a prison.  Further, Defendant has been diagnosed with underlying medical conditions that may increase the serious risks that COVID-19 presents for Defendant. See Coronavirus Disease 2019 (COVID-19) – People at Increased Risk – People with Certain Medical Conditions, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed January 12, 2021).

   Among Defendant's health conditions, he has been diagnosed with obesity, which the CDC's current guidance indicates increases the risk of severe illness from COVID-19.  See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#obesity (last accessed January 12, 2021).  At the time Defendant was sentenced in this case, he stood 5 feet 6 inches tall and weighed 170 pounds.

PSR ¶ 52, d/e 51.  Since he has been in BOP custody, Defendant's weight has fluctuated over time, eventually increasing to as much as 260 pounds at one point, resulting in a body mass index of 40, which is considered to be severly obese.  Second Am. Mot. Compassionate Release 3; Resp. 5.  The BOP medical records filed in this case reflect that Defendant has been counseled several times on lifestyle changes that he should make to manage his weight. See, e.g., BOP Medical Records at Page ID 7, d/e 116.

Defendant has also been diagnosed with hypertension, which the CDC's current guidance indicates might increase the risks from COVID-19.  See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#heart-conditions (last accessed January 12, 2021). While the BOP medical records do reveal some concerning blood pressure readings in the past, they also show that this condition was not being treated with medication until July 2020.  See BOP Medical Records at Page ID 40, d/e 114-1.  The most recent blood pressure checks in November of this year shows dramatic improvement since beginning medication, with readings of 126/79 and 115/76.  BOP Medical Records at Page ID 1, 4.

The Court recognizes that there have been a significant number of confirmed cases of COVID-19 at FCI Pekin, and that those cases are no longer confined to the minimum security satellite camp, but have now occurred within the medium security FCI as well.  Importantly for purposes of Defendant's Second Amended Motion for Compassionate Release, Defendant was among those who contracted COVID-19 in the latest wave of infections.  See Resp. 4; BOP Medical Records at Page ID 28, d/e 114-1.  According to the medical records, Defendant was diagnosed with COVID-19 on or around December 3, 2020, but remained asymptomatic.  BOP Medical Records at Page ID 36, d/e 114-1.  In a COVID-19 screening conducted on that date, Defendant denied "new onset cough, new onset shortness of breath, stuffy or runny nose, chills, repeated shaking with chills, muscle or body aches, new onset loss of taste or smell, sore throat, or new onset abdominal pain" and exhibited "[n]o signs of respiratory distress." Id. at Page ID 23.

Further, Defendant has nearly fourteen years remaining on his sentence, assuming he receives full good time credit.  In committing the offense for which he is now incarcerated, Defendant first paid two people to place a bomb at the home of a confidential informant.

When the two individuals failed to set the bomb off, Defendant drove his girlfriend and co-conspirator to the home and directed her to place a second explosive device.  When the second bomb was detonated, the explosion caused extensive damage to the home, although fortunately no one was injured.  Defendant's criminal history includes prior convictions for battery, aggravated battery, burglary, illegal possession of a weapon by a felon, and distribution of cocaine base, among others.  PSR ¶¶ 28-38.

The Court does note, however, that despite his lengthy incarceration, Defendant has been disciplined only twice while in BOP custody, and the most recent of the two incidents was in 2006. As Defendant notes in his Second Amended Motion, the risk of recidivism does tend to go down with age.  Second Am. Mot. Compassionate Release 4.  Additionally, Defendant has maintained consistent employment while in prison.  Furthermore, Defendant has received treatment for mental health conditions while in BOP custody that previously had gone untreated, which may also account for Defendant's relative lack of disciplinary history.

Finally, though, Defendant still has not proposed an adequate release plan.  According to Probation's Memorandum, the individual

Defendant proposes to reside with does not intend to notify her landlord that Defendant would be living with her, and she may be placing both her housing and the housing assistance she receives at risk by allowing Defendant to live at the home.  <u>See</u> Mem. 1-2. For these reasons, the Probation Office has concluded that the proposed release plan is not suitable.  <u>Id.</u> at 3.

The Court, taking all the relevant facts into account, finds that Defendant has not established that there exist extraordinary and compelling reasons that warrant a reduction in his term of imprisonment.

### III. CONCLUSION

For the reasons set forth above, Defendant Robert Vaughn's Second Amended Motion for Compassionate Release (d/e 112) and Defendant's pro se Renewed Motion for Compassionate Release (d/e 110) are DENIED.


ENTER:  January 12, 2021

*/s/ Sue E. Myerscough*
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE
